Good morning, my name is Mark Garbo, and may it please the Court, Counsel. I'm here on behalf of David Goetzke in the case at Bar. Our issue and the case itself is about as straightforward as it gets, I believe. This man was previously convicted of a sex offense against a minor, and he was charged with writing letters to a minor with sexual content in them, which the government contended and the jury found constituted a substantial step toward the commission of the crime, specifically the 2422B offense. I would like to start my argument here with the indictment and the language in the statute. The key word I would like to point out to the defendant was to engage or try to coerce, entice, et cetera, a victim to engage in sexual conduct. You know, I appreciate the sort of mystical difficulty of distinguishing intent in a substantial step in the conduct. But here, unlike, I think, really any other case that I am familiar with, Goetzke knew Gables. So they already knew each other. He knew where he lived, and he knew that the deal was to entice or persuade the kid to come back to Montana. So in that context, you just focus on everything that he said in those letters. And just to kind of summarize, tell me why it's not sufficient for both prongs. He wrote two letters. He made numerous late night phone calls. He sent Gable pictures. He asked for pictures of him in the pants he wore when he was in Montana. He told Gable he'd like to see him. He told him that he had a nice butt, et cetera. He told him he liked wrestling with him and giving him a back rub. He told him he was a cute young man. He told him he'd gotten new a motorcycle, which seems to me to be fairly compelling evidence of an enticement. He said what he would like to do if Goetzke did come back to Montana, and it was quite sexual. And he said, you know, if he came back, we'd go fishing and inferentially see your vampire. So why doesn't that all add up to sufficient evidence? Because, Your Honor, every time that you said it, every time that you look at the letters, it's if you come to Montana. If you come to Montana. If he's trying to persuade, entice, coerce, et cetera, it's how do I get you here to Montana? Can I get you on a bus and get you here to Montana? Can I get you on a plane so I can meet you here? So let me see if I understand your argument. Your argument isn't a generic argument that letters are an insufficient, substantial step to committing this crime, but rather that the specific nature of the letters didn't quite get there because it didn't talk about how to transport the child. I don't want to get into a situation where I admit, frankly, that the letters are a substantial step. Well, I know you're not admitting that these letters are, but I'm trying to understand, in theory, your argument. It's both. It's both that the letters in and of themselves, even if they said, come to Montana next week, here's a plane ticket, the other cases that we have in here, Meek and Dinger, which are basically the computer type cases, are cases where eventually the perpetrator or the person attempting to perpetrate the crime against the minor shows up at a prearranged location after he has been conversing over the Internet with a police officer who pretends to be the minor and they nab him. This reminds me of a problem I had in an earlier case, which is those things are sufficient, but does that mean that those are necessary? There's a difference. In other words, you can do X and that's enough to get you there, but that doesn't necessarily mean that you're not allowed to use Y as another means of proving the same crime or the same thing. I agree with you in the sense that that's my argument, is that we've seen what other courts have done and it's not here. But I would like to impress upon this Court today the importance of not allowing, going back to this merely communication is what my basic argument is here. These are merely communications, as disgusting as they are. They are communications to this young man about perspective things, what I would like to do. And if you look at the statute, it says that he's trying, that a person committing this crime must be trying to engage. And that has to be this young man. No, no, it doesn't say that. To persuade or entice the person to engage. To engage, exactly. But that's a huge difference from what you just said. He is, I don't think it is, Your Honor, with all due respect. I believe that what I'm trying to get across to this Court is that he has to be trying to persuade him to engage. Not to say, here's young man, here's what I'd like to do you, if this happened, if that happened, if you were here, what if we were saying, come back in eight years when you're of legal age and we can do whatever we want. There's no time frame here. He doesn't ever try to engage, try to persuade this young man to engage in sex. And as a matter of fact, the trial showed, evidence at trial showed, that they were together in that home and Mr. Getsky had the opportunity to sexually assault this child if he so chose at the time and didn't. I think that that shows that he's fantasizing. But that's a jury argument. I mean, that's a good jury argument. The jury didn't buy it. So now the question is, why is it legally insufficient to have these letters encouraging this child to begin to think of your client as a sexual partner? Because he's not actually getting the child or attempting to get the child into a situation where he can commit the crime. What substantial step was taken to complete the crime? Mailing the letters or what was a substantial step? I argue none. I argue there was no substantial step, Your Honor. The substantial step would have been getting that boy into a situation where the crime could be committed. And that's where those other cases go. That's why the law enforcement gets them into a point where they say, see, you were showing up in physical presence with this child to commit that act and that is not where Mr. Getsky went at all. And that is the essence of my argument, that there has to be this physical meeting in order to engage in this offense. And he has to be trying to set up that meeting and all he ever says about a meeting, about coming to Montana, and that's where the prosecution hangs its hat, is if you come to Montana, but if you look on page 50 of the trial transcript, that is letter number one. All he wants the minor to do in that letter is write back. The minor, of course, never gets the letter. The letter is intercepted and law enforcement writes him back. Now in letter number two, there's only two letters, and that's on page 60, starts on page 60 of the supplemental excerpts that were submitted by counsel. If you are coming to Montana, it says. If you do come to Montana, and if you do come to Montana, finally I'll buy you a motorcycle. But only if you come to Montana. Why isn't, I'm looking on page 62, where he says, are you ever going to come to Montana again? He doesn't stop there. Maybe this summer. It sure would be nice to have you here. So why isn't, I mean, it isn't literally, please come this summer, but why isn't the natural interpretation of that, please come this summer? But he's not trying to arrange a meeting. He's hoping. He's fantasizing. He's hoping. Where is the arrangement? But again, that's the jury argument. I don't believe so. I believe it's a sufficiency argument of the evidence, because if you take a person in Mr. Getsky's position, and you, with a prior sex offense, which he had to admit to that jury, and then you put these disgusting letters in evidence, they are going to convict. And those letters do not try to set up a meeting, and they do not constitute a substantial step toward the commission of the crime. They just, I think that is a legal argument and not a factual one, Your Honor. Thank you very much. Okay. Thank you. Mr. Ebro, Ms. Hurd. Good morning. May it please the Court. My name is Marcia Hurd, and I'm an AUSA from the District of Montana. I'm here on behalf of the United States. I handled this case below and am handling it, obviously, on appeal. I think the Court has hit the nail squarely on the head in this case. This was a rather interesting trial because no one disagreed with what the facts were, and this was simply an argument about the sufficiency of the evidence. The United States took the position and charged this case as an attempt because the letters actually never made it to the little boy. His mother intercepted them because she was concerned about why this person was writing to her son after the phone calls, and so he never actually received those communications. But the Court is absolutely correct that there is not a case within this circuit that says a meeting is required, that travel is required. The whole point of this statute as set forth in the Meek case and in what the elements are, it's that a person must knowingly either actually or attempt to persuade, induce, entice, or coerce a person under age 18 to engage in sexual activity that would constitute a criminal offense. And the Meek case sets forth those elements very clearly, and the United States believes that it is absolutely proven beyond a reasonable doubt that the letters that were written here and in conjunction with the phone calls that were made, that's what Mr. Getsky was attempting to do here. The second letter that was written that is part of the excerpts of record in this case talks about hoping that he would come up the next summer and that he loved spending time with him, he enjoyed giving him a back rub and some of the things that he wanted to do to him but didn't have time. The reason he didn't have time was because this child went to Montana to basically kind of reenact his father's childhood in Montana. His father was in the military and thought he'd like to give him that same kind of opportunity to spend time with this older gentleman who was basically kind of like a grandfather to all of them. Unbeknownst to this little boy and his mother who put him on the plane, the person that he was going to stay with had David Getsky living with him, and David Getsky is a prior convicted sex offender of little boys. In this case, the little boy stayed, I believe, approximately three, maybe four days before Child Protective Services was notified by a caller that there was a convicted sex offender in this residence. They went out and actually removed him and sent him home. David Getsky had somewhere between three and four days to start grooming this young man, which is exactly what he did. Took pictures of him, did various assorted things to have fun with him, and obviously, in his own words, gave him back rubs and was starting that grooming process that then continued over a very lengthy period of time after this little boy went back home to live with his mother again. Just a second. Assuming that he did entice and all of that part of the case has been proved, but this is an attempt case where you also have to have that he took substantial steps towards the commission of the crime itself, and what is a substantial step here? In this case, the substantial step was writing the letters and mailing them. As we talked a little bit in the closing argument, it wouldn't be necessarily illegal or a violation of the statute if David Getsky had thought about this in his own mind, had written the letters, torn them up and thrown them away, because nobody else would have known. Or written them in his diary or told them to his friends or anything like that. Exactly. That certainly, you know, as distasteful as it is, would not constitute the substantial step. But here, he not only wrote the letters, he figured out the little boy's address, stamped them, mailed them, responded back to a second letter and made numerous phone calls. He sent this little boy photographs, asked for him to send photographs back that would have some special meaning to them from having spent this time together in the summer. I mean, this was a grooming process that was going on, and there was no doubt in David Getsky's mind that when this little boy came back, they were going to become sexual partners. That was very, very clear. Well, I've read all the cases, I think. And can you point to one case where either the defendant didn't arrange to meet the minor or went to meet the minor or designated a place to see the minor or designated a time to see the minor, as distinct from just something that happened in this case? In the published cases within this circuit, no. There are none that I'm aware of. None. Right. Right. That's correct. But I think the distinction that Judge Graber made in the earlier case and in this case is very accurate. Just because there are no reported cases doesn't mean this isn't a violation of the statute. This is a little bit ‑‑ this is actually the only male enticement case I've ever handled. Usually mine are over the Internet but are often law enforcement related and a meet is made. Well, have you read the Buffington case and the Steele case about the bank robberies? I'm sorry. Which case, Your Honor? The bank robberies. The Steele and Buffington. Yes. The guy puts a wig on and he's sitting right outside the bank and the motor's running. Right. And they say that's not an attempt because he didn't take a substantial step towards doing it. Exactly. He was just sitting outside and then I believe he apparently just drove off. Didn't go in, didn't anything like that. So he's putting on a disguise and he's being in the location, but it doesn't mean that he made the substantial step. Same with Steele. Same thing. Yes. That's correct. Would you say it would be a fair conclusion that the Ninth Circuit is more stringent or tougher as to requirements of what the substantial step is than other circuits? I think that's fair. I think that we have been more strict on saying you really have to have made a substantial step and mere preparation is not a substantial step. In this case, mere preparation would have been finding out the young boy's address, maybe making sure he had stamps, maybe even writing the letter, but then never doing anything else. That would have been mere preparation. But in this case, David Getzke took the additional step of sending the letter with photographs, making phone calls, responding back much more sexually in the second letter, and asking again for photographs to be sent back and describing in graphic detail what it was that he wanted to do and asking the boy if he could do that when he came for the summer. And so the United States admits that goes way beyond mere preparation and it goes into the substantial step that's required in this case by the statute. Are there any other questions from the panel? I don't think so. Thank you. Thank you, counsel. Both of you, the matter just argued will be submitted.
judges: Rymer, Graber, Rhoades